# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE WILLBORN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 5382** |
| | ) | |
| **DANIEL SABBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |


## MEMORANDUM OPINION


SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Jeffrey Lowe's (Lowe) and Defendant The Lowe Group Chicago, Inc.'s (Lowe Group) (collectively referred to as "Lowe Defendants") motion to dismiss. This matter is also before the court on Defendant Midwest Realty Ventures, LLC d/b/a Prudential Rubloff Properties' (Midwest) motion to dismiss. For the reasons stated below, the court denies the motions to dismiss in their entirety.


## BACKGROUND

In January 2008, Defendant Daniel Sabbia and Defendant Adrienne Sabbia (Sabbias) allegedly retained the services of Lowe, a licensed real estate agent. Lowe

1

is allegedly the sole officer, director, and shareholder of Lowe Group. Midwest is allegedly a real estate brokerage firm, and Lowe and Lowe Group allegedly act as agents of Midwest.

The Sabbias allegedly instructed Lowe to list, market, and sell a property in Chicago, Illinois with a five bedroom, 8,000 square foot single-family home on it (Property), and the Sabbias allegedly told Lowe that they would prefer not to sell the Property to an African-American. The Property was allegedly listed and then taken off the market for a short period. The Sabbias allegedly re-listed the Property with Lowe in April 2009 at a reduced price of 1.799 million dollars.

In January 2010, Plaintiff George Willborn, his wife, Plaintiff Peytyn Willborn, and their two children (collectively referred to as "Willborns"), allegedly hired Dylcia Cornelious (Cornelious) to act as their real estate agent and assist them in purchasing a home. On January 2, 2010, the Willborns allegedly viewed the Property and, according to the Government, Defendant Daniel Sabbia was sitting in his car as the Willborns left the Property and he waived to the Willborns. On the same day, the Willborns allegedly extended an offer on the Property for 1.5 million dollars, and after negotiations back and forth between the parties, the Sabbias allegedly extended a final counteroffer of 1.7 million dollars. On January 4, 2010, the Willborns allegedly accepted the counteroffer, and Cornelious prepared a sales contract (Contract). That same day when Cornelious and Lowe were discussing the transaction, Cornelious allegedly informed Lowe that George Willborn was a radio personality. According to the Willborns, Lowe indicated that the Sabbias had

researched George Willborn on the internet. The Willborns contend that such internet searches would have led to photographs of George Willborn, clearly indicating that he is an African-American.

On January 5, 2010, Lowe allegedly forwarded the Contract, which contained the terms that they had agreed to during the negotiations, to the Sabbias for their signature. For several days, there was allegedly no response from the Sabbias, and on January 11, 2010, Lowe indicated that the Sabbias would not sign the Contract and that they were taking the Property off the market. Lowe allegedly indicated that the Sabbias had decided not to sell because they had changed their mind about moving. The Sabbias also allegedly indicated that they could not find a suitable new home and that they wanted to keep their children in their current schools, but did not explain why the Property had been on the market or why they had been negotiating the sale of the Property.

On January 12, 2010, the Property was allegedly taken off the market. On January 28, 2010, George Willborn, Peytyn Willborn, and Cornelious filed a verified complaint with the United States Department of Housing and Urban Development (HUD), alleging that Defendants had violated the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.* (HUD Complaint). In February 2010, the Sabbias and Lowe allegedly received notice of the HUD Complaint. Shortly after receiving the HUD Complaint, the Sabbias allegedly directed Lowe to offer the Willborns the opportunity to buy the Property for 1.799 million dollars. The Willborns allegedly rejected the offer, and in March 2010, Lowe allegedly re-listed the Property at 1.799

million dollars.  The Willborns contend that, prior to the filing of the HUD

Complaint, the Sabbias refused to sell the Property to the Willborns because they are

African-Americans.

On March 19, 2010 and July 14, 2010, the Willborns filed amended

complaints with HUD.  The HUD Office of Fair Housing and Equal Opportunity

determined that there was reasonable cause to believe that a discriminatory housing

practice occurred, and on August 9, 2010, the General Counsel of HUD brought

charges against Defendants.  In accordance with 42 U.S.C. § 3612(a), the Willborns

elected to have their HUD claims decided in a civil action instead of in an

administrative hearing, and on August 26, 2010, the Willborns brought an action in

federal court (Case Number 10 C 5382)(Willborn Action).  The Willborns included

in their complaint FHA claims, claims alleging violations of 42 U.S.C. § 1982

(Section 1982), claims alleging violations of 42 U.S.C. § 1981 (Section 1981), and

claims alleging violations of the Illinois Human Rights Act (IHRA), 775 ILCS 5/3-

301 *et seq.*

On September 20, 2010, the United States (Government) brought an action

against Defendants on behalf of the Willborns for violations of the FHA, pursuant to

42 U.S.C. § 3612(o), which authorizes the Attorney General to commence a civil

action for violations of the FHA (Case Number 10 C 5967)(Government Action).

This court found that the Government Action was related to the instant action and

on January 14, 2011, the Government Action was reassigned to the undersigned

judge based on a finding of relatedness.  The Lowe Defendants and Midwest have

filed motions to dismiss the claims in the Willborn Action and the Government Action.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

Lowe Defendants and Midwest move to dismiss all claims brought against them in the Willborn Action and the Government Action.

I.  Lowe Defendants

Lowe Defendants contend that there are not sufficient allegations in the complaint in the Willborn Action or the complaint in the Government Action (collectively referred to as "Complaints") to indicate any involvement by the Lowe Defendants in racial discrimination.

A.  FHA Claims

Lowe Defendants argue that there are not sufficient allegations in the Complaints to state FHA claims against them under 42 U.S.C. § 3604 (Section 3604), 42 U.S.C. § 3605 (Section 3605), or 42 U.S.C. § 3617 (Section 3617).

1.  Section 3604 Claims

Lowe Defendants contend that there are not sufficient allegations in the Complaints to state Section 3604 claims against them, arguing that Lowe did not make the Property unavailable and that there are no allegations that Lowe acted because of the Willborns' race.  Section 3604 provides in part that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a).  Lowe Defendants contend that there are no allegations in the Complaints indicating that Lowe made the Property "unavailable" as specified in Section 3604.  Lowe Defendants argue that the allegations in the

Complaints indicate that Lowe worked diligently to complete the sale to the Willborns and that it was the Sabbias who refused to sign the Contract. Lowe Defendants contend that once the Sabbias refused to sign the Contract, Lowe had no power or authority to sell the Property to the Willborns. Lowe Defendants also argue that Lowe did not violate Section 3604 merely by conveying a message to Cornelious that the Sabbias had refused to sign the Contract. Lowe asserts that he did not force the Sabbias to refuse to sign the Contract.

### a. Knowledge and Intent

Lowe Defendants argue that there is no "allegation of actual knowledge" by Lowe of any unlawful practices under Section 3604 in the Complaints sufficient to hold Lowe liable under Section 3604. (L Reply 3); *see also Rivera v. Incorporated Village of Farmingdale*, 2011 WL 1260195, at *6 (E.D.N.Y. 2011)(dismissing claims against a defendant because the plaintiffs had "proffered no evidence that [the defendant] had any knowledge of any allegedly unlawful conduct on the part of" another defendant). Lowe Defendants also argue that there is no allegation of unlawful intent by Lowe. *See Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977)(indicating that an FHA claim can be based a showing of intent to discriminate or upon a discriminatory impact). As explained above, at the pleading stage, a complaint needs only to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting

*Twombly*, 550 U.S. at 570).

The Willborns allege that the "Sabbias told Lowe that they would prefer not to sell the [Property] to an African-American. . . ." (W Compl. Par. 3.07). The Government alleges that "Daniel Sabbia advised Lowe that he would prefer not to sell his home to an African-American. . . ." (G Compl. Par. 11). The Willborns and the Government also allege that Lowe acted as the Sabbias' real estate agent during the negotiations with the Sabbias and conveyed the Sabbias' positions to Cornelious, which plausibly suggests that the Sabbias discussed the Willborns with Lowe. (W Compl. Par. 3.13-3.17); (G Compl. Par. 16-25). Lowe also allegedly knew that the Willborns were African-Americans prior to sending the Contract to the Sabbias. (G Compl. Par. 16).

The Willborns also allege facts that indicate that the Sabbias changed their mind about selling the Property to the Willborns for no apparent reason and that Lowe was aware that the Sabbias had changed their mind after researching George Willborn on the internet and presumably observing from photos of George Willborn that he is an African-American. (W. Compl. Par. 3.16-3.22). The Government also alleges that the Sabbias changed their mind about selling the Property to the Willborns for no apparent reason, and that Daniel Sabbia had previously observed the Willborns when they viewed the Property and thus was aware that the Willborns were African-Americans. (G. Compl. Par. 15). Based on such allegations, it is plausible that Lowe may have had knowledge that the Sabbias were acting unlawfully. The allegations in the Complaints plausibly suggest that Lowe may have

8

been aware of the Sabbias' alleged unlawful motives and that Lowe continued to assist the Sabbias in cancelling the deal that had been made with the Willborns. The allegations also plausibly suggest that Lowe profited from his work for the Sabbias, thus providing an incentive to continue to act as the Sabbias' agent. It is plausible that Lowe was paid to act as the Sabbias' agent during the dealings with the Willborns and when the Property was subsequently re-listed in March 2010. If Lowe had withdrawn from representing the Sabbias when they allegedly sought to engage in unlawful discrimination, Lowe would have lost the opportunity to earn money on the relisting and lost the opportunity to obtain referrals of future clients from the Sabbias.

Lowe Defendants contend that there is no allegation that Lowe personally harbored an animus against the Willborns because of their race. However, if Lowe knowingly assisted the Sabbias in their unlawful conduct, he could be held liable for such conduct. *See, e.g., Moore v. Townsend*, 525 F.2d 482, 485 (7th Cir. 1975)(indicating that a real estate agent could be liable for assisting the owner in racial discrimination); *Dillon v. AFBIC Development Corp.*, 597 F.2d 556, 562 (5th Cir. 1979)(stating in FHA case that "an agent who assists his principal in committing a tort is himself liable as a joint tortfeasor").

Lowe Defendants also point out that the Willborns indicate that Lowe informed the Sabbias that racial discrimination would be unlawful. The Willborns allege that when the Sabbias indicated their preference not to sell to African-

Americans, Lowe informed the Sabbias that refusing to sell the Property to African-Americans would be a violation of federal and state housing laws. (W Compl. Par. 3.07-3.08). However, even if that is true, it remains a factual issue as to whether Lowe knowingly continued to assist in unlawful discrimination after making such a disclaimer to the Sabbias. Lowe could not insulate himself from any liability merely by making such an oral disclaimer. Lowe Defendants also contend that the allegations in the Complaints show that, rather than preventing the sale of the Property, Lowe worked hard to close the sale. However, even if the allegations indicate that Lowe took steps to close the sale, it remains a factual issue whether, at the point that the Sabbias decided not to sell the Property to the Willborns, Lowe knowingly assisted in the unlawful discrimination. Lowe Defendants also contend that Lowe merely forwarded offers to the Willborns, as required by the Illinois Real Estate License Act, but as Lowe Defendants acknowledge, the Act does not authorize an agent to knowingly commit or acquiesce to unlawful discrimination. (L Mem. Dis. 9).

Lowe Defendants also argue that even if he had withdrawn from any involvement in the sale of the Property, the Property would not have been sold and the Willborns would still have been deprived of their fair housing rights. However, whether that is true involves factual considerations outside the pleadings. Also, even if Lowe's withdrawal would not have altered the ultimate outcome of the sale, Lowe would not have been allowed to potentially profit from his continued involvement in

the sale of the Property.  Thus, based on reasonable inferences that can be drawn from the allegations in the Complaints when separately considered, and when the allegations are accepted as true, it is more than merely possible that Lowe had the requisite knowledge and intent.  It is plausible that Lowe may have knowingly and with the requisite intent taken part in the alleged unlawful discrimination and the refusal to sell the Property to the Willborns because of their race in violation of Section 3604.

       b.  Strict Liability for Conduct as an Agent

       Lowe also argues that a real estate agent cannot be held strictly liable for the actions of his client.  Lowe argues that he only acted as the Sabbias' agent and did not have authority to sell the Property to the Willborns himself.  However, in the instant actions, the allegations in the Complaints plausibly suggest that Lowe may have been a knowing participant in the unlawful discrimination.  Thus, neither the Government nor the Willborns are attempting to hold Lowe strictly liable under Section 3604 solely on the basis that he acted as a real estate agent for the Sabbias. In the instant actions, Lowe can be liable under the FHA, even though he only possessed authority to act as the Sabbias' agent and did not possess the authority to sell the Property himself.  *See, e.g., Dillon*, 597 F.2d at 562.

       The Seventh Circuit has indicated that the courts "'must hold those who benefit from the sale and rental of property to the public to the specific mandates of

11

anti-discrimination law if the goal of equal housing opportunity is to be reached.'"

*City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1097 (7th Cir. 1992)(quoting *Walker v. Crigler,* 976 F.2d 900, 905 (4th Cir. 1992)).  It is plausible, when accepting the allegations in the Complaints as true, that Lowe was an individual that benefitted from the alleged unlawful conduct by the Sabbias and that Lowe thus may be liable under Section 3604.

Lowe Defendants also argue that Lowe did not have knowledge of any unlawful intent on the part of the Sabbias and that the instant actions are based on an "untenable 'shoot-the messenger' theory of liability."  (L Reply 3).  Whether Lowe actually had knowledge of the Sabbias' alleged motives in refusing to sell the Property to the Willborns and whether Lowe possessed the requisite intent for a Section 3604 claim is a factual matter that is premature to address at this juncture. At the pleadings stage, when accepting the allegations in the Complaints as true, the Complaints each, when separately considered, contain sufficient allegations to plausibly suggest that Lowe Defendants acted in a manner that would subject them to liability under Section 3604.  Therefore, the court denies the Lowe Defendants' motion to dismiss the Section 3604 claims.  At the summary judgment stage, the Government and the Willborns will need to point to sufficient evidence showing that Lowe Defendants are liable under Section 3604.

2.  Section 3605 Claims

Lowe Defendants argue that the Section 3605 claims should be dismissed as duplicative, arguing that the Section 3605 and the Section 3604 claims are based on the same facts and injury.  Section 3605 provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."  42 U.S.C. § 3605. The Seventh Circuit has held that the fact that there may be "overlap in some circumstances" in the protections provided in the FHA does not render such protections duplicative.  *See Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009)(comparing Section 3604 and Section 3617); *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992)(comparing Section 3604 and Section 3605 and quoting *United States v. Naftalin,* 441 U.S. 768 (1979) for the proposition that "that there may be some overlap is neither unusual nor unfortunate").  Thus, the mere fact that some of the underlying facts may be the same for the Section 3604 claims and the Section 3605 claims and that there is overlap in the protections of such provisions does not warrant a dismissal of the Section 3605 claims as duplicative.  Lowe Defendants cite *Beringer v. Standard Parking O'HARE Joint Venture*, 2008 WL 4890501, at *1 (N.D. Ill. 2008) to support their position, but *Beringer* did not even involve claims made under the FHA, much less Section 3604

and Section 3605.  The claims at issue in *Beringer* were claims brought pursuant to the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g).  *Id.*  In addition, this action is merely at the pleadings stage and the Willborns are only required to provide a limited record of facts at this juncture.  It can be properly ascertained whether the Section 3604 and Section 3605 claims are truly duplicative at the summary judgment stage after discovery has been conducted.  Also, even if the Section 3604 and Section 3605 claims are deemed to be duplicative, if one type of such claims is resolved in favor of Lowe Defendants at the summary judgment stage, the other type of claim might still be available to the Willborns as an alternative claim.  It is therefore premature to dismiss the Section 3605 claims as duplicative.  Lowe Defendants also argue that to the extent that Section 3604 and Section 3605 claims are similar, the Section 3605 claims should be dismissed for the same reasons given for dismissing the Section 3604 claims.  However, as indicated above, the Willborns have stated valid Section 3604 claims against Defendants.  Therefore, the court denies Lowe Defendants' motion to dismiss the Section 3605 claims.


   3.  Section 3617 Claims

   Lowe Defendants contend that the Section 3617 claims should be dismissed. Section 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other

person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of" the FHA. 42 U.S.C. § 3617. For a Section 3617 claim, a plaintiff must establish: (1) that "[]he is a protected individual under the FHA," (2) that "[]he was engaged in the exercise or enjoyment of h[is] fair housing rights," (3) that "the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of h[is] protected activity under the FHA," and (4) that "the defendants were motivated by an intent to discriminate." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

Lowe Defendants contend that the Complaints fail to include valid Section 3604 and Section 3605 claims and that they therefore cannot support Section 3617 claims. However, as explained above, it is premature to dismiss the Section 3604 claims and Section 3605 claims. Lowe Defendants also argue that there are no allegations that Lowe interfered with the Willborns' fair housing rights. Lowe Defendants contend that Lowe merely acted as an intermediary between the Willborns and Sabbias and that there are no allegations that indicate that Lowe coerced, threatened, or intimidated the Willborns to relinquish their fair housing rights. However, as explained above, it is premature to assess whether Lowe took part in the alleged unlawful discrimination or had an intent to further the discrimination. It is plausible, when accepting the allegations in the Complaints as true, and separately considering the Complaints, that Lowe interfered with the Willborns' fair housing rights.

Lowe Defendants argue that there are no allegations of confrontational conduct such as coercion or intimidation. However, Section 3617 contains no such requirement and in fact, in addition to making it unlawful "to coerce, intimidate, [or] threaten," Section 3617 makes it unlawful to "interfere" with an individual's fair housing rights. 42 U.S.C. § 3617; *see also Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001)(stating that "interference, in particular, has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws")(internal quotations omitted)(quoting *United States v. Hayward,* 36 F.3d 832, 835 (9th Cir. 1994)); *Scialabba v. Sierra Blanca Condominium No. One Ass'n*, 2001 WL 803676, at *5 (N.D. Ill. 2001)(citing *United States v. Wagner,* 940 F. Supp. 972, 979 (N.D. Tex. 1996), for the proposition that "§ 3617 is broadly applied to all practices that interfere with the exercise of federal fair housing rights").

Lowe Defendants also argue that for a Section 3617 claim, the Willborns must point to a pattern of harassment instead of an isolated occurrence. Lowe Defendants point to *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) for that proposition. (L Mem. Dis. 15). However, in *Bloch* the plaintiffs were bringing FHA claims against their condominium association for alleged harassment based on the plaintiffs' religion and race. *Id.* at 772. The court in *Bloch* stated that "'[i]nterference' is more than a 'quarrel among neighbors' or an 'isolated act of discrimination,' but rather is a 'pattern of harassment, invidiously motivated.'" *Id.* at 783 (quoting *Halprin v.*

*Prairie Single Family Homes of Dearborn Park Ass'n,* 388 F.3d 327, 330 (7th Cir. 2004)).  However, as the Government correctly points out, it would make little sense to require a showing of a pattern of harassment in the context of the alleged FHA violations relating to the sale of a residential property.  By its nature, if a prospective buyer is deterred from purchasing a property in violation of the FHA, the relationship between the seller and the prospective buyer will be severed.  Thus, the refusal or deterrence in the purchase may be only an isolated event and not a pattern of harassment with the prospective buyer.  In the instant action, once the Sabbias decided not to sell to the Willborns, they severed the relationship between themselves and the Willborns, and it is not necessary for the Willborns to show an extensive pattern of harassment for a Section 3617 claim.  If Lowe knowingly and intentionally took part in the interference, then he too may be liable under Section 3617.  Therefore, the court denies the Lowe Defendants' motion to dismiss the Section 3617 claims.


    <u>B.  IHRA Claims</u>

    Lowe Defendants argue that the Willborns have failed to state IHRA claims under 775 ILCS 5/3-102 (Section 5/3-102) of the IHRA.  The complaint filed in the Government Action did not include any IHRA claims.  In addition, we note that although the Willborns have stated that they are bringing claims under 775 ILCS 5/3-103, (W Compl. Par. 5.02-5.04), it is apparent from the content of their allegations

that they intended to refer to Section 5/3-102. Section 5/3-102 provides the

following:

> § 3-102. Civil Rights Violations; Real Estate Transactions. It is a civil rights violation for an owner or any other person engaging in a real estate transaction, or for a real estate broker or salesman, because of unlawful discrimination or familial status, to (A) Transaction. Refuse to engage in a real estate transaction with a person or to discriminate in making available such a transaction; (B) Terms. Alter the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith; (C) Offer. Refuse to receive or to fail to transmit a bona fide offer to engage in a real estate transaction from a person; (D) Negotiation. Refuse to negotiate for a real estate transaction with a person; (E) Representations. Represent to a person that real property is not available for inspection, sale, rental, or lease when in fact it is so available, or to fail to bring a property listing to his or her attention, or to refuse to permit him or her to inspect real property; (F) Publication of Intent. Print, circulate, post, mail, publish or cause to be so published a written or oral statement, advertisement or sign, or to use a form of application for a real estate transaction, or to make a record or inquiry in connection with a prospective real estate transaction, which expresses any limitation founded upon, or indicates, directly or indirectly, an intent to engage in unlawful discrimination; (G) Listings. Offer, solicit, accept, use or retain a listing of real property with knowledge that unlawful discrimination or discrimination on the basis of familial status in a real estate transaction is intended.

775 ILCS 5/3-102. The Willborns indicate in their complaint that Defendants

violated subsections A through G of Section 5/3-102. (W Compl. Par. 5.02-5.04).

Lowe Defendants argue that Lowe did not have control over the Property and thus

could not have violated any provision of Section 5/3-102. However, as explained

above, it is premature to assess whether Lowe took part in the alleged unlawful

discrimination. It is plausible, based on the facts in the complaint in the Willborn

Action, when accepted as true, that Lowe took part in violations of subsections A and C through E. The allegations in the complaint in the Willborn Action indicate a refusal to engage in a real estate transaction and thus state a claim under subsection A. The allegations in the complaint in the Willborn Action indicate a refusal to receive a bona fide offer in a real estate transaction, and thus state a claim under subsection C. The allegations in the complaint in the Willborn Action indicate a refusal to negotiate in a real estate transaction, and thus state a claim under subsection D. The allegations in the complaint in the Willborn Action indicate representations that a property is not available when it is in fact available, and thus state a claim under subsection E.

In regard to subsection G, the allegations in the complaint in the Willborn Action indicate that Lowe placed the listing for the Property with knowledge of the alleged prejudice by the Sabbias, and thus did so with knowledge that unlawful discrimination in the real estate transaction was intended. Thus, the Willborns have also stated a valid claim under subsection G. Therefore, at this juncture, it is premature to dismiss the IHRA claims premised on subsections A, C through E, and G.

Lowe Defendants argue that there are no allegations in the Complaints that would plausibly suggest that any Defendants were involved in a civil rights violation relating to an alteration of the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with the

transaction. There are sufficient allegations in the complaint that the Sabbias altered the terms of the sale with the intent to violate the civil rights of the Willborns. Therefore, it is premature at this juncture to grant the motion to dismiss the claim premised on subsection B.

Lowe Defendants also argue that subsection F is not applicable in this case because there are no allegations in the complaint in the Willborn Action that any Defendants were involved in a civil rights violation relating to the publication or mailing of statements, or advertisements, or the use of a form of an application for a real estate transaction. There are sufficient allegations in the complaint to plausibly suggest that the Sabbias violated the civil rights of the Willborns in the context of advertising the sale of the Property. Therefore, it is premature at this juncture to grant the motion to dismiss the claims premised on the IHRA.

### C. Negligence and Conspiracy Claims

Lowe Defendants argue that negligence and conspiracy claims are pre-empted by the IHRA. The IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in th[e]" IHRA. 775 ILCS 5/8-111(D). Illinois common law is preempted by the IHRA if it is "inextricably linked with a civil rights violation" and the "plaintiff can[not] establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act."

*Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997). Lowe Defendants argue that the negligence and conspiracy claims are premised on the underlying duty not to discriminate against the Willborns. While it appears possible that the allegations in the complaint in the Willborn Action and the allegations supporting the negligence and conspiracy claims are related, it is premature at this juncture to resolve this issue. Therefore, the motion to dismiss the negligence and conspiracy claims is denied. Based on the above, Lowe Defendants' motion to dismiss is denied in its entirety.

## II. Midwest's Motion to Dismiss

Midwest adopts the arguments of Lowe Defendants. Midwest also argues that the court should dismiss the conspiracy claims for failure to state a claim and that, to the extent that Plaintiffs seek punitive damages, such requests should be stricken. In regard to the FHA claims, as explained above, the Complaints contain sufficient allegations to plausibly state FHA claims. Midwest argues that there are no allegations that Midwest had knowledge of the circumstances of the dealings between the Willborns and the Sabbias or the conversations that took place between Lowe and the Sabbias. However, Lowe and Lowe Group allegedly were acting as an agent of Midwest. (W Compl. Par. 3.04); (G Compl. Par. 7). As explained above, the conduct and liability of Lowe Defendants cannot be determined at the pleadings stage. It is plausible, based on the allegations in the Complaints, that Midwest had knowledge of the alleged discrimination or ratified the actions of Lowe. *See, e.g.,*

*Meyer v. Holley*, 537 U.S. 280, 285 (2003)(stating that "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment"); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1100 (7th Cir. 1992)(stating that "[a] principal is liable for punitive damages for the discriminatory acts of her agent *only if* she knew of or ratified the acts")(emphasis in original)(internal quotations omitted)(quoting *Hamilton v. Svatik*, 779 F.2d 383 (7th Cir. 1985)). In addition, it also plausible that Lowe may have acted as a managerial agent of Midwest and was acting in the scope of employment, which could potentially make Midwest liable for punitive damages. *See, e.g., Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538 (1999); *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003). Whether there is sufficient evidence to support such conclusions and thus whether punitive damages are recoverable against Midwest can be better assessed at the summary judgment stage.

Midwest also argues that the Government and the Willborns have not alleged that Defendants' conduct was motivated by an evil motive or intent or that Defendants engaged in wanton and willful misconduct. *See, e.g., Matchmaker*, 982 F.2d at 1099(stating that "[i]n fair housing cases, punitive damages are awarded to punish and deter outrageous conduct" and "[p]unitive damages are appropriate when defendants act wantonly and willfully or are motivated in their actions by ill will, malice, or a desire to injure the plaintiffs"). Based on the allegations in the

Complaints, when accepted as true, it is plausible that Defendants may have engaged in subterfuge, motivated by ill will, to purposefully deprive the Willborns of the opportunity to purchase a home because of their race.  Thus, at this juncture, it is premature to strike the requests for punitive damages.  Therefore, based on the above, Midwest's motion to dismiss is denied in its entirety.


## CONCLUSION

Based on the foregoing analysis, the court denies Lowe Defendants' motion to dismiss in its entirety and denies Midwest's motion to dismiss in its entirety.


_Samuel Der-Yeghiayan_

Samuel Der-Yeghiayan
United States District Court Judge


Dated:  May 19, 2011